UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

M.L., a minor, and C.D. and S.L., his parents,

Petitioners,

v.

FEDERAL WAY SCHOOL DISTRICT and
WASHINGTON SUPERINTENDENT OF
PUBLIC INSTRUCTION,

Respondents.

CASE NO. C01-0899C

ORDER

I.      INTRODUCTION

This matter has come before the Court on the United States Court of Appeals for the Ninth Circuit's remand order instructing this Court "to determine, in its discretion, whether to award reasonable attorneys' fees as part of the costs to the [Petitioners] as the prevailing parties pursuant to 20 U.S.C. § 1415(i)(3)(B)." *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 651 (9th Cir. 2005).  Subsequently, the Ninth Circuit also instructed this Court to consider the appropriate amount of fees, if any, including those for the appeal. *M.L. v. Fed. Way Sch. Dist.*, No. 02-35547, Order (9th Cir. filed Mar. 3, 2005).

The parties having fully briefed the issues, and the Court having carefully considered the papers filed by the parties in support of and in opposition to Petitioners' ("Parents") request for fees, the request is hereby GRANTED as follows.

II.     BACKGROUND

ORDER – 1

1    Parents commenced this action on June 14, 2001, to appeal an administrative law judge's finding

2  in favor of Respondent Federal Way School District ("FWSD") that the FWSD's "evaluation team was

3  appropriately constituted."   In their appeal, Parents pursued three issues, summarized by them as follows:

4  (1) the failure to include a regular education teacher on the individualized education program ("IEP")

5  team; (2) the failure to mainstream M.L. by declining to continue to place him in a regular education

6  class; and (3) the denial of a free appropriate public education ("FAPE") by failing to take remedial action

7  after M.L's motion reported that M.L. was being teased by his classmates.  (Pet'rs' Mot. 3–4.)

8    On April 30, 2002, this Court entered an order granting Respondents' motions for summary

9  judgment.  Parents filed an appeal of this order with the Ninth Circuit and obtained a ruling vacating that

10  order and remanding the matter for further findings with respect to attorneys' fees and equitable

11  reimbursement.

12    In its ruling, the Ninth Circuit found that the FWSD had violated the procedural requirements of

13  the Individuals with Disabilities Education Act ("IDEA") requiring that at least one regular education

14  teacher be included in the development of an IEP for a disabled student.  20 U.S.C. § 1414(d)(1)(B)(ii).

15  However, the appeals court ruled against Parents on their teasing argument, finding that "[Parents] have

16  not adduced sufficient evidence to show that M.L. was denied a FAPE by the FWSD's alleged failure to

17  stop M.L.'s classmates from teasing him during his five days in a regular education classroom." *M.L.*, 394

18  F.3d at 651.

19    Consistent with its finding regarding the procedural defects of FWSD's IEP development, the

20  Ninth Circuit directed this Court to enter an order requiring the School District to select an IEP team that

21  complied with the IDEA's requirements.  *Id.*  However, by the time this matter was remanded back to

22  this Court, M.L. and Parents had already moved out of the Federal Way School District, rendering the

23  convening of a new IEP team in Federal Way moot.

24    Parents and FWSD ultimately stipulated to entry of a partial summary judgment in favor of

25  Parents on the equitable reimbursement issue in the amount of $2,478.  (Dkt. No. 57.)  Thus, the sole

26  ORDER – 2

1    remaining issue before this Court is Parents' claim for an award of attorneys' fees.

2    III.    ANALYSIS

3          A.    *Prevailing party*

4          The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its

5    discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the

6    parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  The Ninth Circuit has adopted the

7    "prevailing party" analysis set forth by the Supreme Court in *Buckhannon Board & Care Home, Inc. v.*

8    *West Virginia Department of Health & Human Resources*, 532 U.S. 598, 604 (2001).  *Shapiro v.*

9    *Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 864–65 (9th Cir. 2004).  This analysis requires a

10   finding of a "material alteration of the legal relationship between the parties."  374 F.3d at 864–65 (citing

11   *Buckhannon*, 532 U.S. at 604).  In further explaining the *Buckhannon* inquiry, the *Shapiro* Court

12   confirmed that "a plaintiff is not the prevailing party if his or her success is purely technical or de

13   minimis."  *Id*. at 865 (citing *Parents of Student W. v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1498 (9th

14   Cir. 1994)).  The *Shapiro* Court also noted that the "alteration" of the relationship between the parties

15   must be "judicially sanctioned."  *Id*.  However, the court was also careful to note that "a party may be

16   accorded prevailing party status by being awarded 'some relief by the court,' even if only an award of

17   nominal damages."  *Id*. (citing *Buckhannon*, 532 U.S. at 603–04).

18         Here, Parents brought this action to appeal the ALJ's finding that the FWSD had convened a

19   properly constituted IEP team.  This action ultimately resulted in a Ninth Circuit panel finding that the

20   FWSD had violated the IDEA's procedural requirement regarding the presence of one regular education

21   teacher on the IEP team.  More important, a majority of the panel found that this procedural error was

22   not harmless.[1]  Consequently, the appeals court instructed this Court to issue an order directing the

23

24         [1]Judge Alarcón found that the FWSD's failure to ensure that at least one regular education
     teacher attended the first IEP meeting constituted a structural error requiring reversal of this Court's
25   judgment.  Recognizing, however, that he was alone in applying the structural error analysis, Judge

26   ORDER – 3

1    FWSD to select an IDEA-compliant IEP team.  *M.L.*, 394 F.3d at 651.  Shortly after the case was

2    remanded, the parties stipulated to an equitable reimbursement award to Parents of $2,478.  Thus, the

3    first question presented to the Court is whether, in light of these facts, Parents are properly considered

4    the "prevailing party" in this action.

5          The FWSD contends that the Ninth Circuit's remand order to this Court regarding convening a

6    new IEP team did not materially alter the relationship between the parties because it provided no benefit

7    or value to Parents.  Specifically, the FWSD points out that (1) since Parents have moved out of the

8    District, the relief ordered by the Ninth Circuit is moot; (2) Parents have not sought such an order since

9    the remand; and (3) Parents have waived their right to entry of such an order by this Court by stipulating

10   to entry of the partial judgment and through their motion for attorneys' fees.  The Court finds that these

11   contentions, even if true, are irrelevant to the analysis.

12         The question posed by *Buckhannon* is whether the party seeking prevailing party status obtained

13   relief, not whether that party followed through and took advantage of the relief granted.  In explaining

14   that prevailing parties need not obtain a judgment against or admission of liability from a defendant, the

15   *Buckhannon* Court emphasized that the crucial element is "a court-ordered change in the legal

16   relationship between the plaintiff and the defendant."  532 U.S. at 604 (citation omitted).  Here, the Ninth

17   Circuit conferred upon Parents the legal right to compel the FWSD to convene a new IEP team.  Indeed,

18   by insisting that Parents subsequently waived this right, the FWSD concedes that Parents possessed this

19   right, a right they did not possess when they commenced this action in federal court.  In addition, because

20   the majority of the Ninth Circuit panel in this case found that the procedural defect in the IEP team was

21   not harmless error, the Court finds that the relief granted was not de minimis. Therefore, the Court finds

22   that the Ninth Circuit's remand order materially altered the relationship between Parents and the FWSD.

23

24   _____

     Alarcón also applied the harmless error standard of review and found that the procedural error was not
25   harmless.  *M.L.* 394 F.3d at 650 n.9.

26   ORDER – 4

Having made the above determination, the Court need not address the FWSD's argument that the July 15, 2005 stipulated judgment in favor of Parents for $2,478 did not materially alter the legal relationship between the parties.  This stipulated judgment cannot be considered on its own, but must be considered as part of the total relief obtained by Parents.

For these reasons, the Court concludes that though the money judgment was relatively small, the Ninth Circuit's remand order materially altered the relationship between the parties in such a manner that Parents are to be considered "prevailing parties" for the purposes of the IDEA.

       B.       *Disallowance of fees under § 1415(i)(3)(D)'s*

The prevailing party analysis is only a threshold question.  Even a prevailing party may be statutorily barred from receiving an award of fees and costs if certain conditions are met.  Section 1415(i)(3)(D) of the IDEA provides that fees and costs may *not* be awarded

> in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if —
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parent is not more favorable to the parents than the offer of settlement.

*Id.* § 1415(i)(3)(D)(i).

The FWSD argues that this subsection bars Parents from recovering fees because the relief ultimately obtained is not more favorable than what the FWSD offered Parents in its January 15, 2001 settlement offer.  Parents contend that this settlement offer, made before the administrative due process hearing, is irrelevant and ought not to be compared against the judicial relief ultimately obtained by Parents.  The Court disagrees.

ORDER – 5

Central to Parents' position is the argument that the statute's use of the conjunction "or" creates two separate "tracks," one for judicial proceedings and another for administrative proceedings. Under Parents' proposed interpretation, in cases like this one that start with an administrative proceeding and continue with an appeal to the courts, it would be inappropriate for a court performing the fees analysis to consider a settlement offer made prior to commencement of the judicial proceeding, even though the basic dispute is the same throughout. In other words, the commencement of a civil suit "resets" the case history with respect to the fees analysis.

Parents are correct that where the interpretation of a statute is at issue, "analysis must begin with the language of the statute itself." *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005). "[W]hen the statute is clear, judicial inquiry into its meaning . . . is finished." *Id*. (quotation omitted). Here, the subsection at issue begins with the broad introductory statement that fees and costs are not available "in any action *or* proceeding for services performed subsequent to the time of a written offer of settlement if . . ." 20 U.S.C. § 1415(i)(3)(D)(i) (emphasis added). This first "or" serves to bring both "actions" and "proceedings" into the scope of the statutory bar, subjecting fees and costs requests in both actions *and* proceedings to the operation of the criteria to be stated.

The introductory statement is followed by three limiting clauses which explain the "if"—clauses which detail the criteria that will determine whether the statutory bar on fees and costs will be triggered. The first criterion is that the offer be "made within the time prescribed by Rule 68 . . . or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins." Parents propose that this sub-subsection, read in conjunction with the broad introductory statement, be interpreted to mean: (1) no fees and costs will be awarded in any *action* for services performed subsequent to an offer of settlement *made pursuant to Rule 68*; and (2) no fees and costs will be awarded in any *proceeding* for services performed subsequent to an offer *made at any time more than 10 days before the proceeding*

ORDER – 6

*begins.*  However, this proposed interpretation requires that a rigid compartmentalization be implied between "actions" and "proceedings."  This compartmentalization, while possible, is neither necessary nor obvious.  Rather, the second "or," in the sub-subsection, does the work of contemplating offers of settlement regardless of whether they are made in an action or a proceeding.  This interpretation is supported by the specific text of the sub-subsection, which requires that in either case, whether the offer be made in an action or in a proceeding, the offer must be made more than ten days before the hearing occurs in order to trigger the bar on fees and costs.  This latter interpretation stays closer to the express language of the statute than Parents' proposed interpretation, and, for that reason, is to be preferred over Parents' interpretation.

As a result of the foregoing analysis, the Court finds that the statute is plainly written to forbid an award of fees and costs for services performed subsequent to the time of a written offer of settlement to a parent if three factors are present: (1) the offer is made more than ten days before the applicable hearing, (2) the offer is not accepted within ten days, and (3) the court or an administrative hearing officer finds that the relief ultimately obtained is not more favorable than the settlement offer.  In so holding, the Court notes that its conclusion is consistent with a similar conclusion made by the Northern District of Illinois, in *Dell v. Board of Education*, 918 F. Supp. 212, 216 (N.D. Ill. 1995).  The *Dell* Court found itself confronted with a situation involving two levels of administrative hearings.  The defendant had made an offer more than ten days prior to the first hearing and did not formally renew the offer prior to the second hearing.  The plaintiffs made a claim for attorneys fees and costs associated with the second hearing.  The *Dell* Court held, in part, that the defendant school district was not required to formally renew its settlement offer before the second hearing in order to avail itself of the statutory bar: "the section bars recovery of fees for any services performed subsequent to a more-favorable-than-final-relief written offer to the parents, so long as that offer precedes the hearing by at least ten days and is not accepted within

ORDER – 7

the ten-day period." *Id*.  The procedural facts in *Dell* and in the case at bar differ only in that the *Dell*

appeal was to a second administrative level, whereas the appeal here was to a federal court.  For these

reasons, the Court finds that the FWSD's January 15, 2001 settlement offer is relevant and must be

considered.[2]

The FWSD's January 15, 2001 settlement letter offered (1) up to "$4,320 to provide

reimbursement for such compensatory or other educational services as are proposed by parents;" or, in

the alternative, (2) "up to 216 hours of 1:1 ABA services for Student in addition to the services and

programs and opportunity for parent input and participation currently offered by the District."  (Dionne

Decl. Ex. G.)  The FWSD's motion papers explain that the latter option was to include the FWSD's

November 17, 2000 offer to convene another IEP meeting and to place M.L. in an integrated

kindergarten classroom.  In comparison, Parents' ultimate judicially awarded relief consisted of (1) the

right to require the FWSD to convene an IDEA-compliant IEP team, and (2) a reimbursement of $2,478.

With respect to the amount of money ultimately obtained compared to the amount offered in

settlement, the Court finds that the settlement offer and the ultimate relief are functionally identical.  The

settlement letter offered "up to" $4,320—thus, if Parents had demanded their $2,478 in January 2001,

$2,478 is all they would have been paid.  Therefore, the first alternative offered in settlement was

functionally identical to the relief ultimately obtained.

---

[2]Parents cite to *Moore v. District of Columbia*, 907 F.2d 165, 168 (D.C. Cir. 1990), claiming that
the *Moore* Court rejected the argument "that the statute is intended to prohibit fees in a situation where
parents reject a settlement offer at the administrative level, does not [sic] prevail at the administrative
level, and then prevails [sic] in a civil action challenging the administrative decision."  (Pet'rs' Reply 8.)
Parents have misread the case.  The defendant district in *Moore* was trying to prevent an award of fees to
parents who had prevailed in an administrative proceeding.  In so doing, the district argued that the
statute "authorizes the recovery of attorney fees only if the parent *loses* at the administrative level and
then successfully challenges the administrative determination in court."  *Id*. at 167.  This argument was
squarely rejected. Thus, *Moore* stands only for the proposition that the statute authorizes fees when a
parent prevails in an administrative hearing.

ORDER – 8

The second alternative offered in settlement was "216 hours of 1:1 ABA services" in addition to implementation at one of two FWSD schools of the IEP developed at the non-compliant November 13, 2000 IEP meeting.  The FWSD argues that the Ninth Circuit's mandate to this Court to order the FWSD to convene an IDEA-compliant IEP team is not more favorable to Parents than its January 2001 settlement offer because (1) Parents did not follow through and enforce their right to compel the convening of a new team, and (2) the mere convening of a new team without guaranteeing a particular outcome was a de minimis victory.  For the same reasons as discussed in the Court's prevailing party analysis above, the Court finds that the FWSD's first argument is irrelevant.  An option need not be exercised in order to be "more favorable."

The FWSD's second argument falls victim to the specific facts of this case, a case in which a majority of the Ninth Circuit appeals panel condemned the convening of the non-compliant November 13, 2000 IEP meeting.  Judge Alarcón, writing the opinion, stated that "[t]he failure to include at least one regular education teacher on the IEP team deprived the team of 'important expertise regarding the general curriculum and the general educational environment.'"  *M.L.*, 394 F.3d at 646.  Judge Gould, though disagreeing with Judge Alarcón's application of the structural error analysis, found that "the failure to include Ms. Ramsey or Ms. Wicks or any other regular education teacher on the participating IEP team deprived M.L. of an educational opportunity."  *Id.* at 656.  Because of the significance of the procedural error in this case, as characterized by the appeals court, the Court finds that the judicially-obtained remedy of the option to compel formation of an IDEA-compliant team is more favorable to Parents than the settlement offer's option to implement the IEP developed by the noncompliant team.

In sum, although the Court finds that the money portion of Parents' ultimate relief is functionally identical to that offered by the FWSD in settlement, the IEP team portion of Parents' ultimate relief was more favorable to Parents than the FWSD's settlement offer.  Therefore, § 1415's statutory bar to fees

ORDER – 9

1    and costs does not apply to this case.

2           C.     *Special circumstances*

3           "A prevailing party should ordinarily recover an attorney's fee unless special circumstances would

4    render such an award unjust." *Abu-Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir.

5    1988). "Whether or not 'special circumstances' exist involves an examination of two factors: (1) whether

6    awarding fees would further the congressional purpose in enacting the [statute], and (2) the balance of

7    the equities." *Id.* Here, the FWSD argues that special circumstances exist because Parents unreasonably

8    protracted final resolution of the controversy. Specifically, the FWSD cites Parents' rejection of the

9    settlement offer without responding with a counter-offer of their own and the ALJ's finding that Parents

10   had unreasonably refused to attend the November 13, 2000 IEP meeting.

11

12          Part of the FWSD's argument regarding the settlement offer depends on the FWSD's position

13   that the offer was more favorable to Parents than the relief ultimately obtained. This Court has already

14   found as a matter of law that Parents' ultimate relief was more favorable. With respect to Parents'

15   conduct, although Parents certainly could have been more responsive to the settlement offer and though it

16   appears that Parents and their attorney may have been unnecessarily uncommunicative at the September

17   11, 2001 IEP meeting, this conduct cannot fairly be characterized as "singularly counterproductive." *See*

18   *Clyde K. v. Puyallup Sch. Dist., No. 3*, 34 F.3d 1396, 1400 n.5, 1402 n.10 (9th Cir. 1994) (twice noting

19   with disapproval the parents' conduct). Parents' failure to be one-hundred- percent cooperative can

20   hardly constitute "special circumstances" resulting in a denial of attorneys' fees. Finally, the Court finds

21   that Parents' refusal to attend the November 13, 2000 IEP meeting is immaterial and irrelevant, given the

22   Ninth Circuit's finding in this case regarding the importance of FWSD's failure to ensure that a regular

23   education teacher attended the meeting. Parents' attendance would not have rendered the November 13,

24

25   2000 meeting IDEA-compliant.

26   ORDER – 10

The FWSD also argues that special circumstances may exist because Parents did not raise the issue that ultimately became the central focus of the Ninth Circuit's disposition of the case—the presence of a regular education teacher at the IEP meeting—at their due process hearing in February 2001. The FWSD contends that as a result of Parents' omission of this issue at the due process hearing, "the Ninth Circuit made erroneous assumptions and findings." (Resps.' Opp'n 21 n.18.)  The FWSD now attempts to establish that there were, in fact, three regular education teachers present at the November 13, 2000 IEP, by arguing that Sarah Drinkwater, Teresa Thomas, and Lee Saffery "all had credentials as regular education teachers having direct knowledge of the general education curriculum."  This attempt fails.

The FWSD concedes that Parents raised this issue in this Court. (Resps.' Opp'n n.17.)  In other words, Parents raised the issue before this matter proceeded to the Ninth Circuit. As a result, the Court finds that the FWSD had ample opportunity to make this alleged evidence regarding these three individuals' regular education teaching credentials part of the record before this Court and subsequently the Ninth Circuit.

Furthermore, this Court is barred from revisiting this issue by the mandate rule.

> The Supreme Court long ago emphasized that when acting under an appellate court's mandate, an inferior court is "bound by the decree as the law of the case; and must carry it into execution, according to the mandate.  That court cannot vary it, or examine it for any other purpose than execution."

*Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).  Here, the mandate issued to this Court does not allow the Court to revisit the issue of whether the November 13, 2000 IEP meeting was IDEA-compliant.

In addition to the mandate rule, the doctrine of the law of the case also forbids this Court to reopen this issue.  *See Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (stating that the doctrine precludes a court from reconsidering an issue that has already been decided by the same court or a higher

ORDER – 11

court).  Under this doctrine, "[a] court properly exercises its discretion to reconsider an issue previously decided in only three instances: (1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence on remand was substantially different."  *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990).  In the case at bar, only the first and third instances are potentially applicable.

Section 1414(d)(1)(B), governing the composition of an IEP team, requires "at least one regular education teacher *of such child* (if the child is, or may be, participating in the regular education environment)."  20 U.S.C. § 1414(d)(1)(B)(i) (emphasis added).  Here, even though the FWSD presents new, untimely evidence of Ms. Drinkwater, Ms. Thomas, and Ms. Saffery's "regular education teacher credentials," none of these individuals actually were or would have been M.L.'s regular education teacher.  Therefore, even if the Ninth Circuit had concluded that any of these three individuals were actually "regular education teachers," it could not also have concluded that they were "regular education teachers" *of* M.L., as expressly required by the IEP team composition statute.  For this reason, the Court finds that no prior rulings in this case have committed clear error warranting a reopening of this issue.

Because the FWSD's new evidence does not demonstrate that the three individuals proffered as "regular education teachers" were teachers *of* M.L., the Court also finds that the evidence on remand is not substantially different such that a reopening of the issue is warranted.

Accordingly, the Court finds that the doctrine of the law of the case prohibits the Court from reconsidering the Ninth Circuit's conclusion that the FWSD violated the procedural requirements of the IDEA.

Having disposed of the FWSD's specific objections, the Court now proceeds to complete its special circumstances analysis.  As stated above, the special circumstances analysis consists of two prongs: "(1) whether awarding fees would further the congressional purpose in enacting the [statute], and

ORDER – 12

1    (2) the balance of the equities." *Abu-Sahyun*, 843 F.2d at 1252 (9th Cir. 1988).

2          The congressional purpose in enacting IDEA was to "provide parents of handicapped children a

3    substantive right that could be enforced through the procedural mechanisms in the Act." *Barlow-*

4    *Gresham Union High Sch. Dist. No. 2 v. Mitchell*, 940 F.2d 1280, 1286 (9th Cir. 1991). The Ninth

5    Circuit's ruling in the case at bar goes straight to the heart of the IDEA's purpose—in light of the

6    expressly manifested congressional intent underlying IDEA, nothing could be more serious than a

7    procedural error that may have "deprived M.L. of an educational opportunity." *M.L.*, 394 F.3d at 656

8    (Gould, J., concurring). In addition, the Court notes that the FWSD's opposition papers in this motion,

9    consistent with its previous filings, demonstrate its refusal to acknowledge the seriousness of the

10   procedural violation in this case. This refusal is particularly troubling in light of the Ninth Circuit's

11   unequivocal finding that the procedural error was not harmless error. Indeed, the FWSD's papers

12   strongly suggest that the district still believes that no harm was done. A failure to award attorneys fees in

13   this case could well serve as ballast for the FWSD's position. For these reasons, the Court finds that

14   congressional purpose and the balance of the equities both require that fees be awarded.

15

16         D.     *Amount of fees*

17         Parents request fees in the amount of $97,401.50. (Dkt. No. 70, Mercalde Decl. 2.) This amount

18   includes $9,139.00 attributable to preparation of the papers related to the motion for attorneys fees. The

19   FWSD seeks to reduce the total amount on two grounds: (1) the extent of the relief obtained compared

20   to the relief sought; and (2) the billing rates are too high. The Court will address the fees request in two

21   sections, one discussing the $88,262.50 incurred prior to the motion for fees and the other discussing the

22   $9,139.00 incurred in preparing the motion for fees.

23

24               1.     *$88,262.50 incurred prior to motion for fees*

25         In the Ninth Circuit, courts are required to support their determinations regarding attorney fees

26   ORDER – 13

with a discussion of some or all of the twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  These factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*  A court "need not discuss each of the guidelines, so long as it discusses those most relevant to the particular case." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (citing *Kessler v. Assocs. Fin. Servs. Co.*, 639 F.2d 498 (9th Cir. 1981)).  The *Kerr* analysis is a variation of the lodestar analysis in that each of the *Kerr* factors is relevant to determining whether the number of hours or the hourly billing rate, or both, are reasonable in a particular case.

Parents' current attorneys first became involved in this matter at the administrative level, in June 2001.  (Lobsenz Decl. 9.)  However, Parents do not seek any fees related to their work at the administrative level.  The fees requested relate only to the work done in this Court and before the Ninth Circuit.  The total number of hours worked is 415, with 211 of those hours attributable to Mr. James Lobsenz, a senior partner, and 191 hours attributable to Ms. Shawn Mercalde, an associate.  The small number of remaining hours are attributable to one other associate attorney and two paralegals.  262 of the hours were district court-related, and 153 were appeals court-related.

It is true that Parents had a long laundry list of demands at the administrative level.  However, Parents eventually dropped all but three issues, characterized by Parents as:

> (1) the failure to include a regular education teacher on the IEP team; (2) the failure to mainstream M.L. by declining to place him in a regular education class; and (3) denial of a FAPE by failing to take remedial action after M.L.'s mother reported that M.L. was being teased by his classmates.

ORDER – 14

(Pet'rs' Mot. 3–4.)  Of these three issues, Parents prevailed on the first and lost on the last.  The second was effectively mooted.

However, Parents' efforts with respect to the first issue resulted in a novel legal ruling that a district's failure to include a regular education teacher as required by 20 U.S.C. § 1414(d)(1)(B)(i), standing alone, is an error prejudicing the right of a disabled student to receive a FAPE.  The precedential significance of this ruling substantially justifies the time and labor expended by Parents' attorneys in this matter.  In addition, this matter went through two rounds of petitions for rehearing at the appellate level.  Accordingly, the Court finds that *Kerr* factors (1) (time and labor required), (2) (novelty and difficulty of legal questions), and (8) (amount involved and results obtained) justify the hours worked.

The FWSD challenges what it terms "double billing" for items involving conferencing between Ms. Mercalde and Mr. Lobsenz.  (Dionne Decl. ¶ 45.)  However, the FWSD identifies only 20 such "double-billed" hours involving conferences.  Moreover, even though work measured in units of time may appear to be double-billed, work measured in productivity units may not.  Thus, where two attorneys may be working cooperatively and simultaneously on the same matter, they could well be progressing at twice the rate of speed as a single attorney working alone for the same number of hours.  Because of this, and because the number of "double billed" hours appears to be relatively low, the Court finds no reason to reduce the hours billed by the number of "double-billed" hours.

The FWSD makes another related argument—that having two attorneys work on the same matter resulted in some unnecessary inefficiencies.  (*Id.*)  In particular, the FWSD points to the fact that both Mr. Lobsenz and Ms. Mercalde reviewed transcripts.  However, there is no reason to believe that had only one attorney been working on the matter, that single attorney would not have spent the same amount of time as Mr. Lobsenz and Ms. Mercalde combined.  The Court is also reluctant to find that more than one attorney's involvement in a particular matter necessarily results in duplication of efforts.

ORDER – 15

Accordingly, the Court declines to reduce the number of billable hours because more than one attorney worked on this matter.

Factors (3) and (9) address the skills required of and possessed by the fee-requesting attorneys, and speak to the reasonality of the billing rate requested. Here, the parties agree that Parents' attorneys had no prior experience in the realm of IDEA work. However, Mr. Lobsenz has submitted sufficient evidence to establish that he is a well-respected attorney in this community at both the trial and appellate levels. The legal questions involved were clearly complex, evidently sufficiently so to be able to still foster disagreement between the parties even after the Ninth Circuit's ruling. In spite of Parents' attorneys' relative inexperience in the field, they were able to obtain an excellent result for their client.

The FWSD argues that if its own attorney, Mr. James Dionne, who has had 28 years of experience representing school districts, bills his time at an hourly rate of $200, Mr. Lobsenz should not be able to obtain a rate of $250, and Ms. Mercalde should not be able to obtain her rate of $175. However, the Court finds that Parents' attorneys' rates are justified because of the complexity of the work they performed and the result they obtained. In addition, the Court does not find that Parents' attorneys' hourly rates are exorbitantly higher than Mr. Dionne's rate. In particular, the Court is mindful of Mr. Lobsenz's representation that

> [w]e made several attempts to locate experienced counsel for M.L. and his parents, but we discovered that although there were many education law attorneys in this state who represented school districts, we could only locate three attorneys in the State who took handled [sic] cases on behalf of disabled children and their parents. And they all said they were too busy to take on the appellants' case.

(Pet'rs' Reply 20.) This statement demonstrates just how much Parents needed to find an attorney and just how important it was that Mr. Lobsenz and his firm agreed to take the case for them. In addition to this, the Court is also mindful that "Parents' counsel, and Parents' law firm, made a conscious decision to take their first case in this area of the law, knowing that unless Parents prevailed all work done would go

ORDER – 16

uncompensated." (*Id.*)  These last three facts are relevant to the Court's consideration of *Kerr* factors (6) and (10), which inquire into the risk involved in and the desirability of the case.  In light of the facts relevant to these two factors, as well as factors (3) and (9), the Court finds that Mr. Lobsenz's hourly rate of $250 and Ms. Mercalde's hourly rate of $175 are reasonable.

The remaining *Kerr* factors, factors (4), (5), (7), (11), and (12) are not relevant to the analysis in this case.

Therefore, in accordance with the Court's analysis of the relevant *Kerr* factors, the Court finds that both Parents' attorneys' hours billed and billing rates were reasonable.  Accordingly, Parents are entitled to an award of fees of $88,262.50 for work performed prior to September 2005.

### 2.     *$9,139.00 associated with motion for attorneys' fees*

Parents request $9,139.00 in fees associated with their motion for attorneys' fees.  (Mercalde Decl. 2.)  Mr. Lobsenz spent 12.7 hours and Ms. Mercalde spent 28.4 hours on the fees request.

Parents' opening brief was twelve pages long, in line with the local rule applicable to non-dispositive motions.  The FWSD's response was twenty-four pages long.  In order to give Parents a fair chance to respond, the Court gave Parents an extension of time and twenty-four pages in which to reply.

While the absolute amount requested by Parents for work attributable to their fees request, $9,139.00, seems excessive on first impression, this amount represents just under ten percent (9.38%, to be exact) of their overall fees request.  In addition, it is apparent that Parents did not intend to spend so much time on their fees request.  Indeed, it was not until the FWSD filed its relatively complex twenty-four page response that Parents were obliged to step up their efforts as to their fee request.  Nevertheless, despite these mitigating factors, the Court finds that a total of 41.1 attorney hours spent on a motion for fees to be somewhat excessive.

In particular, the Court notes that the total amount billed to prepare the petition for judicial

ORDER – 17

review amounts to no more than $3,200.  (*See* Lobsenz Decl. 9.)  This includes the initial client

conference with Parents, presumably time to become familiarized with the factual and legal contours of

the case, as well as the drafting of the petition itself.  In comparison, though the FWSD's response to the

motion for attorneys' fees was long and complex, many of the legal arguments and issues the FWSD

raised had been raised before, some multiple times.  For these reasons, the Court finds that some

reduction in the amount of fees requested relating to work on this motion is warranted.  This reduction

shall be made in the number of hours, since the billing rates charged by Mr. Lobsenz and Ms. Mercalde

are still reasonable for the same reasons stated above.  The number of hours for each attorney shall be

reduced by one third.  This amount strikes a balance between the relatively low number of hours spent on

the initial stages of the case and the length and complexity of the FWSD's response.

Accordingly, the Court finds that Parents are entitled to a reduced award of $6031.74 for work

done relating to this motion for fees.

IV.    CONCLUSION

Parents' motion for attorney fees is GRANTED.  Parents are entitled to an award of $88,262.50

for work performed prior to September 2005, and $6031.74 for work done relating to this motion for

fees, for a total of $94,294.24.  The Clerk is directed to enter judgment accordingly.

SO ORDERED this 22nd day of November, 2005.


_____

UNITED STATES DISTRICT JUDGE

ORDER – 18